UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| JIMMY JOSEPH NEWELL, )<br>)<br>    Plaintiff, )<br>)<br>VS. )<br>)<br>TAMMY FORD, ET AL., )<br>)<br>    Defendants. ) | No. 16-1003-JDT-egb |

ORDER PARTIALLY DISMISSING COMPLAINT AND DIRECTING
PLAINTIFF TO FILE CLARIFYING AMENDMENT

On January 4, 2016, Plaintiff Jimmy Joseph Newell ("Newell"), who is presently an inmate at the Trousdale Turner Correctional Center in Hartsville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) At the time of filing, Newell was incarcerated at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee. On January 6, 2016, the Court ordered Newell to comply with 28 U.S.C. § 1915(a)(2) or pay the $400 civil filing fee. (ECF No. 6.) Newell filed a notice of inability to comply on March 4, 2015. (ECF No. 9.) On March 7, 2016, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b). (ECF No. 10.) The Clerk shall record the defendants as WCF Warden Tammy Ford, Corrections Corporation of America ("CCA"), Bledsoe County

Correctional Complex ("BCCX") Corporal J. Middleton, WCF Sergeant ("Sgt.") First Name Unknown ("FNU") Camacho, Former TDOC Commissioner Derrick Schofield, TDOC, and WCF Librarian Ms. FNU Gray. Defendants are sued in their individual and official capacity.

## I. The Complaint

Newell alleges that on January 12, 2015, Defendant Middleton, after telling another officer he was going to slam Newell into the wall, proceeded to slam Newell against a van multiple times and then grabbed him by the throat, all while Newell was restrained. (Compl. at 3-4, ECF No. 1.) Newell contends that he began to lose consciousness and suffered bruising and soreness for several days. (*Id.* at 4.) Newell identifies Defendant Middleton as being employed at the BCCX in Wartburg, Tennessee (*id.* at 3); however, it is not clear from the complaint whether this incident occurred at the BCCX or whether Defendant Middleton was perhaps at the WCF because he transported Newell from the BCCX to that facility.

Newell alleges that on February 9, 2015, he was deprived of due process during a disciplinary hearing that resulted in the denial of parole and an increase in his custody level. (*Id.* at 4-5.)

On November 9, 2015, Newell alleges that he requested protective custody due to multiple threats to his safety from inmates with whom he has a conflict, including members of the STG "Rolling 60 CRIPS." (*Id.*) On November 17, 2015 a protective custody hearing was conducted, but despite Newell's explanation of threats and "credible proof," he was returned to the general population. (*Id.*) Newell was immediately

confronted by several gang members for snitching. (*Id.*) Newell alleges that the next day he informed Assistant Chief of Security Goins of his issues and another threat. (*Id.*) On November 18, 2015, Newell was assaulted by inmate Steven D. Simmons, and he was placed in segregation pending an investigation. (*Id.*) On November 25, 2015, Newell alleges he was approached by Sgt. Ferguson, who told him that Sgt. Amos said, "if you don't want a disciplinary, write a statement you were 'just kidding about the assault.'" (*Id.*) Newell complied with the request and was returned to the general population labeled as a snitch. (*Id.*)

Newell alleges that while he was in segregation, all of his legal papers and books were taken from him and that Defendant Gray refused to fulfill his legal requests. (*Id.*) Newell alleges that he wrote Defendant Ford multiple times complaining of his need for access to legal papers and case law. (*Id.*) Newell allegedly missed a legal deadline to file an appeal and also had a request for sanctions due to his legal mail being inappropriately returned. (*Id.*)

Newell alleges that on December 8, 2015, he was again assaulted by a gang member who held a knife to his throat because he had been labeled a snitch. (*Id.*) When Newell reported the incident to Defendant Camacho, he was told it was probably "due to [his] smart-ass mouth." (*Id.*)

On December 9, 2015, WCF went on institutional lockdown, and Newell contends that he was denied access to the law library and all legal resources. (*Id.*) Newell alleges that Defendant Gray wanted to charge him $0.25 a page to look at case law. (*Id.*)

Newell was in fear for his safety and was mentally and emotionally stressed. (*Id.*) He seeks the appointment of a lawyer, injunctive relief, and actual, compensatory and punitive damages.[1] (*Id.*)

## II. Analysis

A.   Screening and Standard

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>   (1)   is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>   (2)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more

---

[1] On August 10, 2016, the Court filed an order denying Newell's motions for appointment of counsel, motion for emergency relief, and motion for preliminary injunction. (ECF No. 26.)

than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure.

*Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.      § 1983 Claim

Newell filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

> liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The claims against the Defendants in their official capacities are construed as claims against their employers. For Defendants Schofield and Middleton, these claims are construed as claims against the Tennessee Department of Correction ("TDOC"), and for Defendants Ford, Camacho, and Gray, these claims are construed against CCA, the private corporation that operates the WCF.

Claims against TDOC are construed as claims against the State of Tennessee. However, Plaintiff cannot sue the State of Tennessee under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of*

*Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The complaint also does not assert a valid claim against CCA. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA, Plaintiff "must show that a policy or well-settled custom of

the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.* The complaint does not allege that Newell suffered any injury because of an unconstitutional policy or custom of CCA.

Furthermore, the complaint contains no factual allegations against Defendant Schofield. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

With regard to Newell's claim that he was denied due process during a disciplinary hearing, a Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993). In this case, Newell's allegation is merely conclusory. Newell has not alleged in what way his due process rights were supposedly violated or who was involved in the alleged violation.

Moreover, a prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Confinement to punitive segregation, the loss of package privileges, fines, and restitution do not constitute an atypical and significant hardship in the context of prison life. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). An increased security classification also does not constitute an atypical and significant hardship. *See Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (citing *Sandin*, 515 U.S. at 484).

Furthermore, any disciplinary conviction or increase in security status resulting from a disciplinary conviction only prevented Newell from being *eligible* for parole. In Tennessee, a grant of parole is discretionary. No provision of Tennessee law "requires the parole board to deny parole in the face of a misconduct report or to grant parole in its absence." *Sandin*, 515 U.S. at 487; *Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000); *see also Hargrove v. Scott*, No. 1:05CV381, 2005 WL 1318858, at *3 (S.D. Ohio June 2, 2005). Therefore, Newell does not have a protected liberty interest that required due process protections.

Newell's claim against Defendant Ford appears to be regarding her failure to investigate or remediate Newell's letters; however, he has no cause of action against Defendant for failing to investigate or take remedial measures to the extent she was aware of his complaints. Although failure to investigate may give rise to § 1983 supervisory liability, *see Walker v. Norris*, 917 F.2d 1449, 1457 (6th Cir. 1990) and *Marchese v. Lucas*, 758 F.2d 181, 188 (6th Cir. 1985), the reasoning in *Walker* and the analysis in its progeny teach that evidence of a failure to investigate can establish municipal liability only. In *Dyer v. Casey*, No. 94-5780, 1995 WL 712765, at *2 (6th Cir. Dec. 4, 1995), the Court stated that "the theory underlying [*Marchese*] is that the municipality's failure to investigate or discipline amounts to a 'ratification' of the officer's conduct."

In *Walker*, the Sixth Circuit distinguished *Marchese* because the Court "imposed the broad investigative responsibilities outlined in Marchese upon the Sheriff in his official capacity." *Walker*, 917 F.2d at 1457 ("The Sheriff is sued here in his official capacity and in that capacity, he had a duty to both know and act."). In 1998, the Sixth

Circuit affirmed the dismissal of a claim of supervisory liability based on the "failure to investigate," stating:

> Young's claim against defendants McAninch and Goff is based solely on their alleged failure to investigate defendant Ward's behavior towards Young. Although Young stated that defendants McAninch and Goff had knowledge of his allegations against defendant Ward, this is insufficient to meet the standard that they either condoned, encouraged or knowingly acquiesced in the misconduct.

*Young v. Ward*, No. 97-3043, 1998 WL 384564, at *1 (6th Cir. June 18, 1998).

In his claim for denial of access to the courts, Newell alleges that Defendant Gray refused to fulfill his legal requests and also wanted to charge him $.25 a page to view case law. (Compl. at 4-5, ECF No. 1.) Newell asserts that he missed a legal deadline to file an appeal and also had a request for sanctions due to legal mail that was inappropriately returned. However, the complaint does not assert a valid claim for denial of Newell's First Amendment right of access to the courts. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."). The Supreme Court has held that

> "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. However, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see also Hadix*, 182 F.3d at 405-06 (explaining how *Lewis* altered the "actual injury" requirement previously articulated by the Sixth Circuit). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). While Newell asserts a deadline to file an appeal was missed and that he had a request for sanctions because of returned mail, he provides no detail regarding the specific cause or causes of action he sought to pursue. The complaint, therefore, does not sufficiently allege that Newell suffered any actual injury with regard to a nonfrivolous legal claim because of the Defendants' actions.

Newell also alleges that his request for protective custody was denied, which resulted in him being assaulted by other inmates. The Court construes this allegation as a claim for failure to protect arising under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992);

*Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 633 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298. To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). "The Supreme Court has held that 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Bishop v. Hackel,* 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer,* 511 U.S. at 834).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. at 32; *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997); *Street*, 102 F.3d at 814; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

13

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). The subjective component must be evaluated for each defendant individually. *Bishop*, 636 F.3d at 767; *see also id.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

Newell alleges that despite his requests for protective custody due to threats by other inmates, he was placed in general population with the label of "snitch" and assaulted twice. However, there are no allegations that any of the named Defendants took part in the protective custody hearing or were aware aware of any specific danger to Newell by a particular inmate or group of inmates. Allegations that any Defendant may have failed to follow TDOC procedures are insufficient to establish such knowledge.

14

Defendant Camacho's remark after the assault on December 8, 2015, that is was probably due to Newell's "smart-ass mouth" is also insufficient to establish he had any knowledge of a danger to Newell prior to the attack.

Newell alleges that Defendant Middleton subjected him to excessive force on January 12, 2015, by slamming him against a van multiple times while he was restrained. For purposes of this screening, Newell has alleged a plausible Eighth Amendment claim against Defendant Middleton. However, as stated, *supra* p. 2, it is unclear from the complaint whether this incident occurred at the BCCX or the WCF. Therefore, prior to ordering service of process, the Court will first require Newell to clarify where this alleged incident occurred.

C. Motion for Service by U.S. Marshal

On April 4, 2016, Newell filed a motion for service by the U.S. Marshal. (ECF No. 4.) If Newell files a clarifying amendment indicating the incident of excessive force occurred at the WCF, this Court will order process served on Defendant Middleton by the Marshal.

III. Conclusion

The Court DISMISSES all claims against Defendants Ford, CCA, Camacho, Schofield, TDOC, and Gray and the official capacity claims against Defendant Middleton for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Newell is ORDERED to submit, within 30 days after the date of this order, an amended complaint with regard to the January 12, 2015, incident of alleged excessive

force by Defendant Middleton, specifically clarifying where it took place. Newell is warned that failure to comply with this directive in a timely manner will result in the dismissal of the excessive force claim without prejudice.

IT IS SO ORDERED.

                                        s/ **James D. Todd**
                                        JAMES D. TODD
                                        UNITED STATES DISTRICT JUDGE